Morning, our first case is In Re Asbestos Products Liability Litigation, number six, Mr. Swafford. Good morning, and may it please the court. My name is Tim Swafford, appearing on behalf of the appellant in this case, the estate of William C. Tracer. I'd like to request three minutes for bottle time, if I may. Granted. Thank you. Mr. Tracer was a faithful employee for the defendants in his career as a merchant marine. As an employee for the defendants and sailing on their ships, he was unnecessarily exposed to hazardous amounts of asbestos. This exposure to asbestos caused him to contract mesothelioma, which he subsequently died from. His estate is bringing two issues to this court today on appeal for consideration. The first is, did Sealand, the defendants Sealand, Delta Steamships, and Ogden Marine waive their personal jurisdiction defense in his case some 30 years ago? We believe the answer to that inquiry is a resounding yes. Second, for those defendants that did not waive their personal jurisdiction defense, those Zapata defendants, did the MDL court err in its treatment of lexicon and the MDL statute by not transferring Tracer's case elsewhere for this issue of personal jurisdiction to be decided? Before we even get to those two issues, I think there are some other things we need to look at. Okay. There's an order dismissing this case. Yes, there is. A mistaken order. Apparently. Yes. Seems to be. Yeah. Court orders are meaningful. Agreed. You could have undone it. Had we known. Somebody had been paying attention. Obviously, when your client gets an order of court, when a lawyer on behalf of the client gets an order of court saying that your client is out of court, that's not something to be lightly cast aside, right? Agreed. So what you do is you say, your honor, respectfully, that was a mistake. Under Rule 60B, please fix it. And in fact, we have a similar asbestos case like this where precisely that was done, but not here. Correct. So what can we do about that? Are we supposed to just pretend that that court order is null and void? Well, there are a couple options this court can consider in dealing with that issue. The first is to do what this court did when this issue was actually brought to it in a previous appeal, in the Blue Appeal. Counsel, Mr. Henderson, brought this issue and the Third Circuit thought so little of it, it didn't even remark upon it in its decision and sent the case back to Judge Rebrano. And they didn't even raise it there because the Wilson decision from Judge Rebrano had already said, these December 6, 2010 dismissals. But they raised it here. They did. And so that case doesn't really obtain. Well, they raised it, but the Blue Panel didn't even remark on it. Well, if the Blue Panel didn't remark on it, then why is it precedent we need to follow? Oh, I'm not saying it's precedent. I'm just saying it's an option. Well, then, if it's not precedent we need to follow, please answer why this panel can disregard a valid order of the district court saying that your case was dismissed. Sure. I don't believe it is a valid order. Okay, then tell us why it's invalid. What precedent or statute tells us that that court order was null and void? Sure. I'm not aware of any statute that would say that. The only decision that I can find in the entirety of the case law in the United States, frankly, is the Wilson decision in front of Judge Rebrano that had the same facts as what we're looking at here. And he found that this dismissal, the December 6. He did it under Rule 60B, right, in that case, right? No, he did not. No. That wasn't the case where the 60B was granted? No, it was not. What happened in that case? Sure. In the Wilson case, that was, Wilson was part of the first set of appeals on this issue that ever came before the Third Circuit. Once Judge Rebrano, once this court reversed Judge Rebrano in the case, the Wilson case made it back to Judge Rebrano, the defendants then raised this issue saying that it should be dismissed. Yeah, that was, no, Wilson was the case that accidentally dismissed the December 10, 2010 en masse dismissal, right? Yes. Okay, so the district court fixed that. It did. The district court didn't fix this. That's true. He didn't. And now you want us to fix it. Well, I don't. And what authority do we, what I'm pressing you on, counsel, is I think a fundamental question of judicial power. Does this appellate court have the power to act like a district court order that was entered in the normal course, but appears to have been accidentally entered is null and void? Sure. I don't think it was entered in the normal course. And I think there's indicia of evidence for that. On the docket, none of the defendants were marked closed. None of the defendants were marked terminated, as you would expect when a dismissal order comes through. That happens in every case when it's dismissed. Well, that's really an issue with the clerk's office more than it is with the issuance of the order, isn't it? Sure, it can be. But the clerk was working in conjunction with our firm, the court personnel, the judge, all of the parties in recognizing. And but no one corrected the order. All those people are working together and no one corrects the order. Right. And that tells me no one knew about it. Well, some I mean, someone had to because they issued it, it seems. And then but I mean, if you want to if you want to pick apart the order, I mean, the order just says dismissal. It doesn't say dismissal with prejudice or without prejudice. This is true. So I mean, if it's a dismissal with prejudice, then I mean, I think it's maybe not an airtight rule. But in most instances, that's going to start the time for appeal or for rule sixty six pretty fast. Sure. Sure. If it's a dismissal without prejudice, then it's not an airtight rule. But maybe that's not a final appealable order. There's instances where it could be. Yeah. Do you have a position on whether this dismissal should be one should be viewed as one with or without prejudice, even though there's silence on that issue? Well, I would argue that it's if it's anything, it's without prejudice because no one knows why it was entered. But rule forty one B talks about dismissals and it says that basically unless you fit into a certain class of dismissal, and I think they give three examples, then the dismissal is with with prejudice, not without prejudice. And this one, this order, maybe due to its uniqueness, doesn't fit into that class. Of order, at least neatly. I don't see it. Maybe maybe you've got arguments that it does, but I don't see it neatly. And so that would suggest that this is a dismissal with prejudice. And if it's a dismissal with prejudice, then that's quite that that's meaningful. And even if it was in error, someone had to find that. Otherwise, there's consequences to not acting on a dismissal without with prejudice, don't you think? I can understand that for sure. I think that if there is mystery surrounding this order and its meaning, then why not simply return it to Judge Rubino and ask him what it meant? Because the time the time's come and done for that. Right. You had a year for 60 B ministerial corrections and your time to appeal. That's that's a great argument. If it's timely, I think. Sure. If it's timely. But I think that in this case where no party, not even Judge Rubino himself knew that it existed, the rule 60 requirements. They're there and I get them. But I think the fact that nobody knew this order existed. So there's a discovery rule now for court order. I'm not saying that. But what I am saying is that certainly no one in this case, not even Judge Rubino, who did an admiral job of administering a docket with 60,000 cases in it, was free from error. And this is so clearly an error. I mean, the defendants did not request a dismissal. We did not authorize. They're requesting it. They're requesting us to enforce it now. They are. But. All right. Well, let's let's try another preliminary issue and then we'll get to your issues. And I apologize that we have our own issues. But, yeah, Another strange aspect of this case to me is that I don't see anything that indicated that Judge Lambrow was sitting by designation in the eastern district of Michigan. OK, so as far as I can tell, this case was an eastern district of Michigan case that was sort of. There was a special master from the northern district of Ohio. Judge Lambrow, who was appointed at the behest of the Sixth Circuit Judicial Conference to try to work through these things, apparently worked through a lot of the cases. This wasn't one of the cases that was resolved. So isn't this a Michigan case, not an Ohio case? No, just the fact that a judge who's in Ohio works on the case doesn't mean that the case has been transferred from the eastern district of Michigan to the northern district of Ohio, does it? Well, I think it does in this case, because where's the transfer order? Well, the transfer order is the Judge Fiken's order from August of 88, where he says, pursuant to an agreement between myself, Judge Lambrow's and the Sixth Circuit Judicial Council, Judge Lambrow's has been designated to handle all asbestos related cases filed by my firm. Judge Lambrow's will process these cases as part of his Marduk program, which is a component of the Ohio asbestos litigation plan, and he concludes his order saying this, accordingly, all new filings and currently pending cases that are addressed in this order are subject to Judge Lambrow's orders. I think Trazor's case clearly goes to Ohio, and we know that. Even though there was no... No formal transfer order? Yeah. Yeah. I mean, it's just so troubling, maybe I'm too much of a stickler for court orders and the rules, but this isn't the way cases get transferred from district to district. I agree. And it seems that you're asking us to forgive all these errors because, hey, we filed 50,000 cases. Don't hold us to the rules. Well, no, I don't... Because let's face it, if this were one case... Yeah. ...with one set of counsel on both sides, these things wouldn't have happened. Sure. The nature of an MDL with thousands of clients and thousands of cases, they're treated en masse. Right. And shouldn't it, doesn't this court and every other court in the country have an interest in making sure that people that choose to file 50,000 or 10,000 cases turn square corners and cross Ts and dot Is? Sure, sure. I think we all want that. And there's... But you want us to ignore a court order that says your case was dismissed and say, It's an accident. Everyone knew it was an accident. Don't worry about it. Well, I think in that case, again, if there's any question about that, there's nothing stopping this court from remanding to Judge Rubeo for the sole purpose of resolving this issue. And I have no doubt in my mind that if he were faced with that issue, he would say, this was a mistaken order, just like Wilson was. Therefore, that dismissal is void, just like you did in Wilson. I mean, that rationale makes a lot of sense if it was a timely appeal. I mean, that makes all the sense in the world to me, at least, if this were a timely appeal. I think you're exactly right, if it were timely. But jurisdiction of this court is premised on timeliness, and Rule 60b-1 is premised on timeliness. And so it's not the thrust of the argument that causes, at least me, any heartburn. It's the fact of when it's raised. Sure, I understand. And I see my time has run out. We're going to give you more time to address the arguments that I didn't give you a chance to address. Sure, and that's okay. Thank you for that. I appreciate that. Why don't we put another five minutes on the clock? Thank you. I believe there is a provision, and it's been some months since I've looked at it, but I do believe there is a provision in the Federal Rules of Appellate Procedure that do allow for this court to remand back to the district court in circumstances. And, again, it's been a few months since I read it. I'm not super familiar with it, but I do remember coming across that. And if there was ever a case. But that's not a pre-jurisdictional remand. We have to have jurisdiction before we can remand, right? It doesn't say even without jurisdiction, a court of appeals can remand. It doesn't give the facts of our case and say, hey, you get to. Or even contemplate pre-jurisdictional remands to say, yeah, before we even had or secured appellate jurisdiction, we can, although we've never had it, give it back. It's hard to give something back that you've never had. That you don't have. Sure, and I get that. I understand that. I think, though, that if the rule allows for it, the idea behind it is there are some things that if they can be fixed before they get to the appellate court, they should be. I think that's the spirit behind that rule. And if there was ever an opportunity for that to happen, it's this. You know, part of my other argument is that, and you guys know this, the federal judiciary loves to have cases resolved on the merits. And these are the types of cases that should have been resolved on the merits. And the defendants hitting the lottery by finding a mistaken dismissal eight years after the fact that no one was given notice to seems exactly the type of case that we don't want to have let out of the federal judiciary on a justice-defending technicality. To me, that seems the most fair thing to do, especially in light of the fact that not even the court knew that this order existed. And when it was brought to his attention in the Wilson case, very quickly he wrote a very nice opinion that explained why this was an error. And I would submit Trazer's case is literally no different at all than that. I have two and a half additional minutes. I guess I'd like to question the court at this point. Would it be okay to reserve that time, or would you want me to begin sort of a truncated ability to get into my arguments? Sure. As it relates to the waiver issue, I believe that the Schrader opinion issued by this court nine months ago fully applies to the defendants here, Delta, Sealand, and Ogden Marine. As we stated, this case began in Michigan, but I believe it went to Ohio. Trazer's name was found on Judge Lambros' orders in Ohio, so we know that he believed he had jurisdiction over the case as well. And Schrader was very clear that the conduct of the defendants by filing an answer constituted waiver. The only wrinkle for this court to decide is if Trazer's case made it from Michigan to Ohio. I believe we've already addressed that, so I won't belabor that point any further. As to the second issue before this court, the real question is, what remedies are available to an MDL court when they're faced with a lack of personal jurisdiction in the originating court? It's an important matter for this court to decide right now. There are 34 active MDLs in this circuit alone, with over 30,000 pending cases. And the reason it's important is because an MDL court is prohibited from giving the one remedy that the federal judiciary, the United States Congress, and the president and their statute-making authority have all agreed should be the remedy where there's a lack of personal jurisdiction or a misvenued case, and that's to transfer, not dismissal. Judge Rebrano incorrectly viewed his authority under the asbestos statute, 1407, as confining himself to dismissal. And that was error. The MDL statute itself. On that waiver issue, Counsel, was Trazer's case transferred to the Eastern District of Pennsylvania from Michigan or from Ohio? I believe it was from Ohio. It had the Eastern District of Michigan notation in it. Again, part of the condition. What does transfer order number 10 say? It probably has the case number from the Eastern District of Michigan on there, because that's how Judge Lambros and the Northern District of Ohio referred to it, was it always had the Ohio cases and then it had the cases from Michigan. And so the originating court was the Eastern District of Michigan, and I assume that probably the transfer orders indicated the originating court rather than that quick transfer from Michigan to Ohio. I see my time is running out. Okay. We'll hear you on rebuttal. Thank you, Mr. Schwager. Mr. Tauber? Good morning, Your Honor. It's Andrew Tauber on behalf of Sea Land. Mr. Henderson and I conferred this morning if it would be possible for me to have 10 minutes and Mr. Henderson five rather than nine and six with the court's permission. That's fine. Thank you very much, Your Honor. This court began, as it rightly should, with appellate jurisdiction, and the fact is there is no appellate jurisdiction here, even if we assume for purposes of discussion that the December 2010 order of dismissal was an error, that still doesn't answer the question whether this court has appellate jurisdiction. Federal Appellate Procedure 4 is clear. It's a jurisdictional requirement that you must file a notice of appeal within 30 days. It clearly was blown. That's the end of the story. The whole purpose of an appeal is to correct error. So if plaintiffs thought this was an error, they should have appealed that order. Well, you didn't think it was an error for a number of years because you actively litigated the case. We didn't know about it either. But two things to that, Your Honor. I want to challenge you on that because Mr. Swatter said that. We didn't know about it. It's a court order filed on the docket of the court. You know about it. It did not appear on the Eastern District of Michigan docket, which is where this case was docketed, Your Honor. Was it not filed in a court? It may be on the Eastern District of Pennsylvania docket. I apologize. I forgot to look at the Eastern District of Pennsylvania. It might well be, but, Your Honor, two things about that. I guess, forgive me for being a little bit flabbergasted, that counsel would say we don't know about a court order filed on the docket. I mean, if you don't, as a matter of fact, know about it, wouldn't you concede that you're charged with knowledge of it? Yes, I would believe that if it appears on the docket, each party has constructive knowledge of that order. Right. I mean, this isn't one of these cases where both sides are saying, you know, there's a breakdown in the mail and this was the old days and we didn't do electronic filing and nobody got it. This isn't one of those cases. That is true, Your Honor. So you got it, they got it, and everybody kept litigating. That is true, Your Honor. So why should we, you know, Mr. Swafford, I think, you know, makes a good equitable point. Why should we play a gotcha game now and throw his client out of court after all this time and energy with both sides having a, quote, fair fight in front of a district judge who believed that he had jurisdiction over the matter the whole time? Several responses to that, Your Honor. First, it is clear black letter law that the conduct of parties cannot vest a court with subject matter jurisdiction. It can perhaps give personal jurisdiction over the matter, but it cannot vest the court with subject matter jurisdiction. So as regrettable as our eight years of continued litigation is, both from wasting the court's time as well as wasting our client's perspective, the fact of the matter remains it is a jurisdictional defect that deprives this court of appellate jurisdiction. And as to the equities, two points on that. First, as the plaintiff bringing the case, I think surely the onus lies principally on the plaintiff, especially if the order issued is an order adverse to the plaintiff's position for them to then prosecute the case properly and file that appeal. And moreover, the federal law is harsh when it comes to jurisdictional defects. I mean, people can be put to death in this country for jurisdictional defects. If they file their habeas petition one day late and they're a capital defendant, they can be put to death. Surely that's not as extreme an outcome as we're asking for here. And moreover, the estate of Mr. Trazer does still have a remedy. Namely, they could sue the plaintiff's counsel firm for judicial malpractice for flubbing the appellate deadline. Not judicial malpractice. Excuse me, Your Honor. Excuse me, Your Honor. No, no, no, no. Legal malpractice. Any other time we could be accused of malpractice. I don't think this is one of them. I misspoke, Your Honor. Yes. So those are the responses I have. Let me just pick up on this notion of jurisdiction and timeliness. Yes. If this order was with prejudice, then I think there's not much room to argue that it's a final appealable order and that Rule 4 jurisdictional clock that you referenced starts ticking. Yes. If the rule's without prejudice, it's a harder question, right? Because there can be dismissals without prejudice. If someone has a complaint that's dismissed without prejudice, they may be given an opportunity to refile, to make amendments, do all these other things. And we don't have to immediately. No one says that Rule 4 automatically starts for dismissals without prejudice. This order that you're relying on for your jurisdictional argument doesn't specify whether it's with or without prejudice. That is true, Your Honor. Now, we've got a rule that kind of suggests it might not, but there's also a mountain of equities that your opposing counsel raises that might suggest that the best reading of this rule would be one that is a dismissal without prejudice. It's a dismissal and transfer to a bankruptcy docket. But that's true of the final order in this case, too, ultimately, right? Your Honor, we get back to the same sort of order in 2018 where it dismisses on jurisdictional grounds with respect to our clients and then sends the rest of the bankrupt defendants into the bankrupt-only docket. So we have the same thing. So if the order of 2010 is not a final appealable order, then the order of 2018 is not either. But this court in shorter found that that is a final appealable order, and that's certainly the position that we take here, too. And I don't see any reason to read the order as one as a dismissal without prejudice. I mean, the default rule is if the order does not specify whether it is with or without prejudice, then it is deemed to be with prejudice. But you said you don't see any reason, and I think the reason exists in the equities that you led and said we didn't know about it. Your opposing counsel led and said we didn't know about it. And so we begin to get to a point in time where we say we've got an order that doesn't specify whether it's with or without prejudice. None of the counsel for any of the parties knew about the order. In light of just principle of construction, it seems that it might be fairer at least, maybe not in accord with rigid jurisdictional rules, but fairer at least to treat this as a dismissal without prejudice. The result of jurisdictional defects is often a resolution of a case not on the merits but on technicalities. And our judicial system lives with that every day and has decided that it's important to have certain jurisdictional rules. And they do lead to situations where cases are not decided on the merits, and we simply accept that. So let me just tease out. I hear your point. Let me just tease this out. Let's say that this 2010 dismissal said are hereby dismissed without prejudice and transferred to the bankruptcy. Your argument goes away. You wouldn't be coming here and saying there was a lack of appellate jurisdiction in the 60B1 time framework. You'd say, oh, that was without prejudice. It certainly would be a different argument, at least. I haven't thought through the implications of that hypothetical, Your Honor. If I could switch to the designation and transfer issue. Judge Feikin's order from 1989 is clear on its face. On the first page it says, these cases will remain docketed in the Eastern District of Michigan. It is not a transfer order under any shape, form, or construction. It's not a transfer order. It does purport to assign Judge Lambrou to handle these cases. That was the word used. It didn't even use this. Even though there wasn't a proper designation. If you take a judge from one district and send him to the other, you need an order filed under 28 U.S.C. 295, right? Exactly. You beat me to the next point, Your Honor. And even if Judge Lambrou had been properly designated and assigned to hear the case, he would have to travel to Michigan to hear the case. You cannot be a judge sitting by designation and then sit in your own district. You have to go to the district. We've laid out the statutes and the law in our supplemental brief. I won't belabor the point here. So we don't think this case ever made it to the Northern District of Ohio. And because it never made it to the Northern District of Ohio, none of the conduct that constitutes the purported conduct of waiver applies in this case. It's simply not a case like Schroeder. And then from the final minute and a half left to me, I could turn to the specifics of my client's case, that's Sealand, specifically. Now, even if this case were properly heard by Judge Lambrou in the Northern District of Ohio, we still win because the conduct that plaintiff points to and the conduct that this court in Schroeder thought was sufficient to find waiver simply does not apply here. The central premise of Schroeder and plaintiff's argument is that we filed a master answer after Judge Lambrou had already found that he did not have personal jurisdiction over us, and that by filing the answer after such a finding, we waived our personal jurisdiction's objection. There's a significant problem with that argument, which I noticed for the first time as preparing for this oral argument. If I could direct the court's attention to two parts of the appendix, I would first direct the court's attention to Marduk Order 41, Exhibit A, which can be found at pages 417 to 418 of the appendix, and I would also point the court to pages 253 to 255 of the appendix, which is the transcript from the October 31st, 1989 hearing. Now, both in the transcript, Judge Lambrou lists those defendants that he believes he does not have personal jurisdiction over, and then in Marduk Order 41, Exhibit A, he again, in the order, lists those defendants that he believes are not properly subject to personal jurisdiction in the Northern District of Ohio. Sealand is not among those entities. So in other words, for reasons unknown, I can't explain why, Judge Lambrou at least implicitly denied Sealand's motion to dismiss for lack of personal jurisdiction. So the entire premise that we filed an answer after having been told that there is no personal jurisdiction as to us in the Northern District of Ohio simply doesn't hold as to Sealand. So... How was that decision valid when he wasn't even hearing the case under a valid court? No, Your Honor, this is an even if argument. This is an even if we were in Ohio argument. I mean, this isn't just, you know, a football game that went into the fifth quarter. This is a football game that started using a basketball, and then a hockey referee came out for the... I mean... Agreed, Your Honor. I've never encountered a case like this before. But so, you know, Schroeder pointed to four things. It was the objection to transfer. My client never objected to transfer. Its motion to dismiss was in the alternative. Either dismiss or transfer. Second, Schroeder pointed to the request by the Thompson-Hines attorney for extra time to consider whether or not to accept transfer. Again, we never made any requests because we didn't object to transfer. Third, the court pointed to the filing of the master answer after Judge Lambrow's finding of no jurisdiction as to that defendant. But again, he never made that finding as to us, so that doesn't apply. And then for all these same reasons, we had no reason to pursue an interlocutory appeal because the issue wasn't for us. Thank you, Your Honor. Thank you, Mr. Tauber. We'll hear from Mr. Henderson on behalf of Delta. Thank you, Your Honors. I'm Harold Henderson on behalf of Delta Steamship Line, Ogden Marine, Inc., and Zapata Tank Ships. Mr. Tauber has covered much of what I would have said, so rather than belabor the points, I would simply mention that with regard to lack of personal jurisdiction, Mr. Swafford suggested that this court simply remand the issue back to Judge Rubino and let him sort out whether or not the 2010 dismissal order was in error. I would just call to the court's attention the reported opinion in Elliott v. Archdiocese of New York, 682 Fed 3, 213. At page 219, Judge Hardiman, you were on that panel where this was said, if we determine we do not have jurisdiction over this appeal, our only function remaining will be that of announcing the fact and dismissing the cause. And I believe that's the appropriate response here, rather than, as Mr. Swafford said, send it back with instructions for Judge Rubino to deal with the issue. If we disagree with you on that, either because there's no explicit with prejudice dismissal or for some other reason, but we conclude that the case never left the Eastern District of Michigan before it was sent to the Eastern District of Pennsylvania, and we send it back down to Judge Rubino, telling him that this was an Eastern District of Michigan case that he got, then what happens? I believe, Your Honor, that we are still in the same, more or less the same position that we are right now. It is an Eastern District of Michigan case, and the relief that the plaintiff is requesting is to send it back to the Northern District of Ohio. This case never came from the Northern District of Ohio. Part of the confusion is that there were four cases filed on behalf of Mr. Treasurer by the plaintiff's firm. They filed one case in the Eastern District of Michigan against the shipowner defendants, and there were three cases filed against various groups of manufacturers in the Northern District of Ohio, but with no shipowner defendants, and none of these appellees in it. There were cases that were, when they were remanded, or cases transferred under 1407 to the Eastern District of Pennsylvania, the shipowner case went from Michigan to Pennsylvania. The manufacturer cases went from Ohio to Pennsylvania. Then there was a consolidation order, and the court designated an Ohio case as the lead case so that all four got folded in and were somewhat treated as Ohio cases, but this case was not. I mean, it just seems like, as I recall, there were some 400 Michigan cases and tens of thousands of Ohio cases, and it's almost as if the 400 Michigan cases were treated like they didn't count, that it was immaterial that they were actually Michigan cases. Is that what happened? To a degree, that's correct, Your Honor, and one of the things for the court's sort of background understanding is that when these motions to dismiss for lack of personal jurisdiction were filed in the Eastern District of Pennsylvania in the NBL process, motions were filed on behalf of a defendant in large groups of cases. For example, Delta Steamship Line's case was filed with a case list of over 750 cases. Ogden Marine's motion to dismiss for lack of personal jurisdiction had over 225 cases on its case list. So our motions to dismiss included a footnote, which we cited in our brief, that says the majority of these cases came from Ohio, but there were also cases from Michigan and the U.S. District for the Virgin Islands. So the same arguments that were being presented had to be dealt with en masse rather than 750 individual motions being filed, all case-specific to the various intricacies of each one. That's part of the MDL process, to try to weed out and deal with common issues and get rid of parties and claims and causes that really shouldn't go forward. Now, granted, there can be some confusion in the process, but as background, that's how this case wound up being treated in the MDL as though it were sort of an Ohio case when, in fact, it was a Michigan case and the 2010 dismissal order was specific to the defendants in the Michigan case. If this case was never really transferred to Ohio, then should we be looking to Schroeder or to the Sixth Circuit opinion in Kalama? You should be looking to the Kalama opinion, Your Honor. Schroeder dealt with, although I respectfully disagree with how that case was decided, the scenario in Schroeder was that the panel focused on objections of ship owners in Ohio cases to being transferred to Michigan. That never happened here. The Kalama opinion and the Matthews opinion, which we submitted recently as supplemental authority, those opinions both dealt with situations where their cases never were in the group of 44 to be transferred. So as Kalama pointed out, actions taken in one case do not bind the defendant in an entirely different case. So if there's an analogy and a parallel for this court to look at, it's the Sixth Circuit Kalama and Matthews, although Matthews is unreported. The Kalama is a reported decision and is certainly binding. It is the appropriate model under which to look at the waiver argument. I would also just briefly point out, as we mentioned in page 17 of our brief, Zapata tank ships and Delta steamship were first served in the Eastern District of Michigan case in 1994. The focus of the waiver arguments deals with what happened in 1989, 1990 or so in Ohio cases. So clearly for those two of my clients... It's hard to say you did anything wrong in 89 or 90. We understand. Okay. Thank you, Mr. Henderson. My time is out unless there are additional questions. Thank you. We'll hear Mr. Swofford's rebuttal. Thank you. I'd like to hit just a couple of points here as to Sealand's argument that somehow they're immune to the Schroeder decision because that only applied to Thompson-Heinz clients. That is simply not true. Judge Lambros' Order No. 40 applied to, quote, all the parties, not just the Thompson-Heinz defendants. It's true. The Thompson-Heinz Defense Council precipitated this idea of, hey, we ran out of time. Is there a different way we can note waiver? And then everyone agreed, yeah, file an answer. And Judge Lambros cemented that understanding for all the parties in Mardoch Order No. 40. So it wasn't the identity of one's counsel that made a difference as to whether or not you waived in this case. It was the conduct. Did you file an answer? If you did, then you waived. Subsequent to that, if you didn't diligently pursue that defense, then you forfeited it. That's what Schroeder says. So Schroeder does not say get caught up in who was representing who, but what was their conduct? Look to that. Second of all, as to Trazer being a Michigan case and not making it to the Northern District of Ohio, Judge Lambros certainly believed that case got there. He issued numerous orders with Trazer's name on it. That case got there. He administered it, whether it was by designation or transfer. And I like to say this about the lack of a transfer order. Using the electronic filing docket data in a case from 1989 doesn't always show everything that happened. It didn't exist at the time. Those dockets were recreated many years later, and they're not always faithful. And I can tell you specifically in this case, we know they're not faithful because the official title for William C. Trazer, and we filed motions to substitute counsel that don't show up on the docket. So I'm not sure that the docket from 19, well, whenever it was recreated to put a decade's worth of history in there, is the best evidence for what did or did not happen in this case. But clearly Trazer's case made it to Ohio. Judge Lambros's orders have Trazer's name on it. He would not have been able to issue any orders or have the authority to even know Trazer's name. It's clear that it, quote, made it to Ohio. And then Judge Lambros executed numerous judicial tasks associated with the case. But that doesn't mean that some or all of those tasks were ultra viris, right? Sure. But if that were true, you would expect. Two lawyers give you sort of a fantastic example, but perhaps not more fantastic than the facts of this case. Yeah. They're in the middle district of Pennsylvania, and they decide that they're not happy with the performance of the judge. And they say, well, let's try Philadelphia. And they knock on the door of this courthouse, and they go find a judge in Philadelphia, and that judge says, welcome, I'm happy to hear your case. I mean, everything that judge does is a nullity, isn't it? Unless the case is transferred from the middle district to the eastern district. Sure. In your fact stereo, absolutely agree. But in this case, we have so much indicia of evidence that the case was transferred. Even if we don't have a transfer order. We have the Judge Fiken's order, which to me is clear authority that even though he didn't use the word transfer, that's what that whole entire document is speaking to. All of it. And just finally, well, I'll conclude there. Okay. Thank you. Thank you, Mr. Swafford. Thank counsel for both sides.